# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

MARIO ISLAS,

    Plaintiff,

vs.

DR. SYAM KILARU et al.,

    Defendants.

No. 12-CV-90-LRR

**ORDER**

## TABLE OF CONTENTS

*I.  INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.  PROCEDURAL HISTORY.*. . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*III.  SUMMARY JUDGMENT STANDARD.* . . . . . . . . . . . . . . . . . . . *2*

*IV.  FACTUAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*V.  APPLICATION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*

    *A.    42 U.S.C. § 1983 Standard.* . . . . . . . . . . . . . . . . . . . . . . *4*
    *B.    Claims Asserted and Parties' Arguments.* . . . . . . . . . . . . . . . *5*
    *C.    Applicable Law.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
    *D.    Application.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*

*VI.  CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*

## I. INTRODUCTION

The matter before the court is Defendants Dr. Syam Kilaru, Ron Mullen, Dr. David Richter, Michelle Waddle, Randy Kirchner and Mike Henry's (collectively, "Defendants") "Motion for Summary Judgment" ("Motion") (docket no. 16).

## II. PROCEDURAL HISTORY

On November 27, 2012, Plaintiff Mario Islas filed a pro se Complaint (docket no. 3), asserting claims against Dr. Syam Kilaru, a physician at the Mt. Pleasant Correctional Facility; Ron Mullen, the warden at the Mt. Pleasant Correctional Facility; Dr. David

Richter, a physician at the Anamosa State Penitentiary; Michelle Waddle, Islas's counselor at the Mt. Pleasant Correctional Facility; Mike Henry, a correctional officer at the Anamosa State Penitentiary; and Randy Kirchner, a Sergeant and grievance officer at the Mt. Pleasant Correctional Facility. On December 18, 2012, Islas filed a Supplement to the Complaint (docket no. 4), providing details of the events underlying the Complaint. On January 28, 2013, Defendants filed an Answer to the Complaint (docket no. 8), denying Islas's claims and asserting affirmative defenses.

On June 18, 2013, Defendants filed the Motion, arguing that the court should grant summary judgment in Defendants' favor and dismiss the Complaint. On July 17, 2013, Islas filed a pro se Resistance to the Motion (docket no. 19). On July 30, 2013, Defendants filed a Reply to the Resistance (docket no. 20). On August 19, 2013, Islas filed a Sur-Reply (docket no. 21).[1] In the Motion, Defendants do not request oral argument and the court finds oral argument is unnecessary. The Motion is fully submitted and ready for decision.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)), *cert. denied*, 132 S. Ct. 1144 (2012). "[S]elf-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r*, 614 F.3d 799, 807 (8th Cir.

---

[1] The court notes that it did not grant Islas leave to file a sur-reply and such filing is not permitted by the Local Rules. Nonetheless, the court shall consider the additional support for his Complaint that Islas includes in the Sur-Reply.

2010). "To survive a motion for summary judgment, the nonmoving party must substantiate [its] allegations with sufficient probative evidence [that] would permit a finding in [its] favor based on more than mere speculation, conjecture, or fantasy." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (second alteration in original) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)) (internal quotation marks omitted). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *See Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir. 2011).

## IV. FACTUAL BACKGROUND

Islas's claims relate to events that occurred while he was confined at the Mount Pleasant Correctional Facility and the Anamosa State Penitentiary. Islas contends that Defendants were deliberately indifferent to his serious medical needs concerning his inguinal hernia. Islas was committed to the custody of the Iowa Department of Corrections on November 5, 2004. Islas was incarcerated at the Mount Pleasant Correctional Facility from April 8, 2010 through June 14, 2011. Islas was then incarcerated at the Anamosa State Penitentiary from June 15, 2011, through January 24, 2012. Islas was then incarcerated at the Mount Pleasant Correctional Facility from January 25, 2012 through November 1, 2012, at which point he was returned to the Anamosa State Penitentiary. Islas remains at the Anamosa State Penitentiary.

When he was initially committed to the Iowa Department of Corrections, Islas reported that he had a history of an inguinal hernia, which he had repaired in the 1980s. Dr. Richter performed a physical on Islas on November 24, 2004, and noted no hernias. Affidavit of Dr. Richter, Defendants' Appendix ("Defendants' App'x") (docket no. 16-3) at 5. On August 11, 2010, while at the Mount Pleasant Correctional Facility, Dr. Kilaru performed a physical on Islas and noted the presence of a minimal inguinal hernia and placed a work limitation on Islas, providing that he was not to lift more than twenty-five

3

pounds. August 11, 2010 Physical Examination, Defendants' App'x at 12. Dr. Kilaru did not impose a push/pull restriction or any further limitations on Islas at this point.

On June 15, 2011, Islas was transferred to the Anamosa State Penitentiary. On November 23, 2011, he was assigned a job as a cell house orderly. According to Dr. Richter, "[t]his job was proper taking into consideration the . . . restrictions placed on Islas by Dr. Kilaru" following the August 11, 2010 physical. Affidavit of Dr. Richter, Defendants' App'x at 6.

On January 17, 2012, Islas reported that he had a hernia that was causing him pain. Dr. Richter ordered a Limited Activity Notice, which restricted Islas from working for two days and instructed the nurse to give him Motrin for pain. On January 18, 2012, Islas saw a nurse to recheck the hernia. The nurse found that Islas "ha[d] a bulge and it [was] not reducible." January 18, 2012 Nurse Encounter, Defendants' App'x at 22. On January 19, 2012, Dr. Richter saw Islas again for his hernia and found that Islas's hernia was easily reducible and, thus, surgery to address the hernia was "an elective procedure and not medically necessary." Affidavit of Dr. Richter, Defendants' App'x at 7. However, at this time, Dr. Richter imposed additional limitations upon Islas, including no lifting of more than ten pounds and a push/pull restriction of ten pounds and issued Islas a hernia belt. January 19, 2012 Physician Encounter, Defendants' App'x at 23, 25.

## V. APPLICATION

### A. *42 U.S.C. § 1983 Standard*

Title 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

4

42 U.S.C. § 1983. Congress enacted 42 U.S.C. § 1983 to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 685 (1978). However, § 1983 itself does not provide any substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Hous. Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "[O]ne cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (stating that § 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred'" (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979))); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) (stating that "Constitution and laws" means that § 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution).

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) "the violation of a right secured by the Constitution and laws of the United States"; and (2) the alleged deprivation of that right "was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### *B. Claims Asserted and Parties' Arguments*

In the Complaint and Supplement to the Complaint, Islas asserts two claims. First, he asserts that correctional officer Henry, at the Anamosa State Penitentiary, improperly "ordered [him] to perform tasks that violated work restrictions placed on [him] by medical staff . . . . This forced work caused [his] hernia." Complaint at 4. Specifically, Islas claims that, as an orderly at the Anamosa State Penitentiary, he had to push a laundry cart, which, when empty, "weigh[]s no less than 300 [pounds]" and has a "full weight . . . well over 1,000 [pounds]." Supplement to the Complaint at 1. Islas asserts that he told

5

correctional officer Henry that he "had a work class [that] kept him from doing heavy work. . . . [Correction officer Henry] called Health Services and was told that [Islas] had to do this job." *Id*. Islas asserts that he continued to protest the work assignment, but correction officer Henry told Islas that "either [he] do it or else [he] would be disobeying a direct order. And that [he] would be punished for such conduct." *Id*. at 2.[2]

Second, Islas asserts that Dr. Richter's determination that surgery is not available to correct Islas's hernia was improper because the "prolonged use" of the hernia belt that Dr. Richter prescribed caused "pain and flare ups" and only offered "temporary relief." Complaint at 5. Islas seeks additional medical treatment to address his hernia, including surgery, as well as punitive damages, damages for pain and suffering, mental anguish and lost wages.

In the Motion, Defendants argue that the court should grant summary judgment in their favor because "there is no evidence that they were deliberately indifferent to a serious medical need" or, alternatively, because "they are entitled to qualified immunity." Brief in Support of Motion (docket no. 16-2) at 2. In his Resistance, Islas argues that summary judgment is not appropriate because the work assignment as an orderly was a violation of the twenty-five pound work limitation and because he has not been afforded surgery to repair his hernia.

---

[2] The court notes that none of the parties provide the specific dates during which Islas served as an orderly or when he made his initial complaint to correction officer Henry. However, the record indicates that such events occurred before January 17, 2012, the date on which Islas reported to Dr. Richter that his hernia was causing him pain. Thus, the only work limitation that Islas was under prior to January 17, 2012, was the limitation that he refrain from lifting more than twenty-five pounds. August 11, 2010 Physical Examination, Defendants' App'x at 12. The record shows that no push/pull limitations were placed upon Islas until January 19, 2012, *after* this injury occurred. January 19, 2012 Noted Doctor Orders, Defendants' App'x at 25.

6

## C. Applicable Law

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII. Accordingly, the treatment a prisoner receives in prison and the conditions of his confinement are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *Helling v. McKinney*, 509 U.S. 25, 31-32 (1993). In its prohibition of cruel and unusual punishment, the Eighth Amendment places a duty on jail and prison officials to provide inmates with necessary medical attention. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Weaver v. Clarke*, 45 F.3d 1253, 1255 (8th Cir. 1995). In this context, a prison official violates the Eighth Amendment by being deliberately indifferent either to a prisoner's existing serious medical needs or to conditions posing a substantial risk of serious future harm. *Weaver*, 45 F.3d at 1255 (comparing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (existing medical needs) with *Helling*, 509 U.S. at 33-34 (risk of future harm to health)).

To show an Eighth Amendment violation, two requirements must be satisfied: (1) "the deprivation alleged must be, objectively, 'sufficiently serious,'" and (2) the "prison official must be, as a subjective state of mind, deliberately indifferent to the prisoner's health or safety." *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (quoting *Farmer*, 511 U.S. at 834), *abrogation on other grounds recognized by Langford v. Norris*, 614 F.3d 445 (8th Cir. 2010); *see also Helling*, 509 U.S. at 32; *Estelle*, 429 U.S. at 106; *Jolly v. Knudson*, 205 F.3d 1094, 1096 (8th Cir. 2000); *Williams v. Delo*, 49 F.3d 442, 445-47 (8th Cir. 1995). In the context of a prisoner's claim of inadequate medical care, society does not expect that prisoners will have unqualified access to health care. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Consequently, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* (citing *Estelle*, 429 U.S. at 103-04); *see also Wilson*, 501 U.S. at 298.

To constitute an objectively serious medical need or a deprivation of that need, the need or the deprivation either must be supported by medical evidence or must be so obvious that a layperson would recognize the need for a doctor's attention. *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995); *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991); *see, e.g.*, *Beyerbach*, 49 F.3d at 1326-27 (insufficient evidence of objective seriousness when there is no medical evidence that a delay in treatment produced any harm); *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (insufficient evidence of serious medical need when the medical need claimed is based on bare assertion of inmate). The objective portion of an Eighth Amendment claim requires a showing of "'verifying medical evidence' that [a] defendant[] ignored an acute or escalating situation or that delays adversely affected the prognosis given the type of [medical condition] present in [the] case." *Dulany v. Carnahan*, 132 F.3d 1234, 1243 (8th Cir. 1997) (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)); *see also O'Neal v. White*, No. 98-2235, 2000 WL 960938, at *1 (8th Cir. July 12, 2000).

To meet the second requirement, the subjective component of an Eighth Amendment claim, a prison or jail official must have a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 297-303; *Hudson*, 503 U.S. at 8. In a medical needs claim, that state of mind is one of "deliberate indifference" to inmate health. *Farmer*, 511 U.S. at 838-39; *Helling*, 509 U.S. at 32; *Wilson*, 501 U.S. at 302-03; *Estelle*, 429 U.S. at 106. Regarding the meaning of the term "deliberate indifference," the United States Supreme Court has explained:

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and

unusual "punishments."

*Farmer*, 511 U.S. at 837. Thus, to establish the second requirement, "deliberate indifference," a plaintiff must assert facts showing the defendant actually knew of and disregarded a substantial risk of serious harm to his or her health or safety. *Id.* at 840-47; *Helling*, 509 U.S. at 32.

Medical treatment that displays "deliberate indifference" violates the Eighth Amendment "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to the medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted); *see also Foulks v. Cole County, Mo.*, 991 F.2d 454, 456-57 (8th Cir. 1993). Negligent acts by prison officials, however, are not actionable under § 1983. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986); *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986); *Estelle*, 429 U.S. at 106. Additionally, an inmate's disagreement or displeasure with his course of medical treatment is not actionable under § 1983. *Dulany*, 132 F.3d at 1240-44; *Bellecourt v. United States*, 994 F.2d 427, 431 (8th Cir. 1993); *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993) (per curiam); *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir. 1991); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990); *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990). "Prisoners do not have a constitutional right to any particular type of treatment." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). Furthermore, "[p]rison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." *Id.*

### D. Application

First, Islas's argument that his work assignment as an orderly was improper given his work limitation restricting him from *lifting* more than twenty-five pounds is unavailing. *See* August 11, 2010 Physical Examination, Defendants' App'x at 12. In carrying out his

9

work assignment, Islas aggravated his hernia.  However, the work assignment was not in violation of the work limitation that he had at that time because, as an orderly, Islas had to *push* the laundry cart and he was under no push/pull restrictions at the time.  *See id*.  Rather, it was not until *after* he aggravated his existing condition and saw medical personnel that Islas was under any push/pull work limitation.  *See* January 17, 2012 Nurse Encounter, Defendants' App'x at 16; January 19, 2012 Noted Doctor Orders, Defendants' App'x at 25; Resistance to the Motion at 2 ("My problem didn't start until 1-17-11 . . . .").  Further, Islas does not claim, and there is nothing in the record to suggest, that his job required him to push the laundry cart after January 17, 2012.  Accordingly, the court finds that Islas's work assignment as an orderly did not conflict with his work restriction and this claim is without merit.

Second, Islas's argument that the Defendants' failure to afford him surgery to repair his hernia amounts to an Eighth Amendment violation because the Defendants displayed a deliberate indifference to his serious medical needs is unavailing.  The court finds that the medical staff at the Mount Pleasant Correctional Facility and the Anamosa State Penitentiary appropriately treated Islas's hernia.  Dr. Kilaru placed appropriate restrictions on Islas in light of his "very minimal inguinal hernia," including a twenty-five pound lifting restriction, on August 11, 2010.  Defendants' Statement of Material Facts (docket no. 16-1) ¶ 5.  Islas neither complained of any hernia problems nor sought medical attention with respect to the hernia between August 11, 2010 and January 17, 2012.  *Id*. ¶ 9.  On January 17, 2012, after the hernia began causing Islas pain, Dr. Richter placed additional work limitations on Islas and prescribed him Motrin for pain.  In addition, Dr. Richter provided Islas with a hernia belt and imposed additional limitations, including a push/pull restriction of ten pounds, no sports activities, no ladders or step stools and a restriction to a lower bunk.  However, Dr. Richter found that surgery "is an elective procedure and not medically necessary."  Affidavit of Dr. Richter, Defendants' Appendix at 7.  Additionally, Dr.

Richter states that medical staff "continue[s] to monitor Islas'[s] general well being without indications of any serious physical problem, including his hernia." *Id.*

The court has examined the record in its entirety and finds that the medical staff at the Mount Pleasant Correctional Facility and the Anamosa State Penitentiary acted reasonably in exercising their professional judgment when treating Islas's hernia. Furthermore, as discussed above, Islas's disagreement or displeasure with his course of medical treatment is not actionable under § 1983. *Dulany*, 132 F.3d at 1240-44; *Bellecourt*, 994 F.2d at 431; *Davis*, 992 F.2d at 153; *Warren*, 950 F.2d at 1373; *Smith*, 910 F.2d at 502; *Givens*, 900 F.2d at 1233. Islas has no constitutional right to "to any particular type of treatment." *Long*, 86 F.3d at 765. Furthermore, Defendants did "not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse[d] to implement [Islas's] requested course of treatment." *Id.* Accordingly, the court finds that the Defendants' treatment of Islas's hernia did not violate the Eighth Amendment and this claim is without merit.[3]

## VI. CONCLUSION

In light of the foregoing, Defendants' Motion for Summary Judgment (docket no. 16) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and to **CLOSE THIS CASE**.

---

[3] In light of the court's conclusion that Islas has failed to show a constitutional violation, the court finds that it is unnecessary to address Defendants' qualified immunity argument. However, a government official sued in his or her individual capacity is "entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to [Islas], establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation, such that a reasonable officer would have known that his [or her] actions were unlawful." *Bernini v. City of St. Paul*, 665 F.3d 997, 1002 (8th Cir. 2012). In light of the factual record, it follows that Defendants are entitled to qualified immunity and Islas's claims fail for this additional reason.

**DATED** this 2nd day of December, 2013.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA